### WRIGHT v. SCHAFF.    (No. 8368.)

(Court of Civil Appeals of Texas. Dallas.
Feb. 26, 1921.)

**1. Carriers �köð283(3)—Carrier owes passenger duty of protection from assaults of employés.**

A carrier owes passengers the duty of protecting them from assaults from its employés.

**2. Appeal and error �köð1002—Verdict on conflicting evidence conclusive.**

Verdict on conflicting evidence is conclusive on appeal.

**3. Carriers �köð321(23)—Refusal of special charge presenting issue of assault held erroneous.**

In an action against the receiver of a railroad company by a negro passenger who had been shot in an altercation with the train auditor, who, according to plaintiff's testimony unwarrantedly cursed and abused him, and was threatening to shoot him at the time he grabbed the auditor's arm, a special charge presenting that issue was improperly refused, not being covered by the main charge.

**4. Carriers �köð283(4)—Carrier liable for insults of its employés.**

A carrier is liable for the insults of its employés.

**5. Carriers �köð321(23)—Refusal of charge as to insults of employés held improper.**

In an action against the receiver of a railroad company by a negro passenger, who asserted that he was insulted and assaulted by a train auditor, the refusal of charges submitting the question of the assault and insults *held* improper under the evidence and pleadings.

Appeal from District Court, Hunt County;
A. P. Donhoney, Judge.

Action by Riley Wright against C. E. Schaff, receiver. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Porter & Porter, of Greenville, for appellant.

Chas. C. Huff, of Dallas, B. M. McMahan, of Greenville, and J. M. Chambers, of Dallas, for appellee.

TALBOT, J. The appellant sued the appellee to recover damages for personal injuries alleged to have been sustained by appellant while he was a passenger on a passenger train of the appellee, and for false imprisonment of the appellant, charged to have been procured and brought about by the wrongful acts of the servants and agents of the appellee. The petition alleges, in substance, that on December 24, 1917, the plaintiff was a passenger on the defendant's passenger train; en route from Greenville, Hunt county, Tex., to Cason, Morris county, Tex.; that appellant is a negro, and was sitting in a seat in the section or compartment reserved and set aside to negroes; that he surrendered his ticket to the defendant's train auditor shortly after leaving the station at Greenville, and was given a hat check; that after passing Campbell, the first town east from Greenville, in Hunt county, Tex., the auditor again demanded of the plaintiff that he surrender his ticket, and, on being informed by the plaintiff that he had surrendered his ticket, and on also being informed by the

plaintiff that his hat check was in his hat, the auditor roughly took the plaintiff's hat from his head and examined the hat; that upon the protest of the plaintiff as to the rough 'treatment of his property by the auditor, the auditor threw the hat back to the plaintiff, and cursed the plaintiff and called him an "impudent black son of a bitch," and told the plaintiff that he would go and get his gun and kill him; that thereafter the auditor left the car in which plaintiff was riding, and in a short time returned to said car and to the seat where plaintiff was sitting; that the auditor had his hand in his right-hand coat pocket; that the auditor had further words with the plaintiff, and then started to draw his pistol from his coat pocket; that the plaintiff in order to protect himself, and believing that he would be killed or seriously injured, jumped from his seat and grabbed the auditor's hand and arm, to prevent himself from being shot; that a scuffle ensued, but, notwithstanding the plaintiff's efforts to prevent injury to himself, he was shot in the knee by said auditor, all without any cause or provocation on the part of the plaintiff; that after the shooting of the plaintiff he was arrested by officers of Hopkins county, Tex., at the instance and procurement of the defendant's agents, and was taken from the train and incarcerated in the jails of Hopkins and Hunt counties, Tex.; that the injury inflicted upon plaintiff was serious and permanent, and by reason of the pain and suffering occasioned he was damaged in the sum of $10,000; that on account of the wrongful arrest of the plaintiff and his incarceration in the jails of Hopkins and Hunt counties, at the instance and direction of the defendant's agents, servants, and employés, and the humiliation and suffering thereto, he was damaged in the sum of $5,-000. The defendant answered plaintiff's petition by general and special exceptions, general denial, and alleged that plaintiff's injury was occasioned by his own misconduct, and by plaintiff's assault upon defendant's auditor with a knife, and that the auditor shot the plaintiff in self-defense; * * * that if plaintiff was injured, said injury was slight, and was occasioned by his own neglect and failure to have proper medical attention. The case was tried before a jury, and upon a general charge of the court a verdict was returned in favor of the defendant.

[1, 2] The first and second assignments of error purport to state the substance of the testimony, and assert that the verdict of the jury is not warranted and supported thereby, and that the court, therefore, erred in not granting the appellant's motion for a new trial. These assignments will be overruled. Admitting that the carrier owes to its passengers all the duty of protection from the assaults of its servants and employés claimed by appellant, yet, while the testimony, upon the issue to which the assignments in question relate, was conflicting, it was sufficient to require submission of the issue to the jury and render their solution of it conclusive upon this court.

[3] The appellant requested the court, by his special charge No. 7, to instruct the jury as follows:

"Gentlemen of the jury, you are instructed that if you believe from the evidence that, at the time in question the defendant's train auditor and the plaintiff had a controversy on defendant's train, the auditor used harsh and threatening words toward plaintiff in the presence and hearing of plaintiff, and in substance stated that he would go and get his gun and come back and shoot plaintiff, and if you believe that the auditor did leave the car and return in a short time and approach the plaintiff with a pistol, and with his hand in his pocket, and that by reason of the language and action of the said auditor the plaintiff believed that the said auditor intended to carry out his threat, or to inflict upon him serious bodily injury, then you are instructed that the plaintiff had a right to take hold of the auditor or grab him, if he did, and to hold on to said auditor until they were separated, or to assault said auditor, if it reasonably appeared to the plaintiff necessary to protect himself against an assault or serious bodily injury at the hands of said auditor."

This charge was refused, and its refusal is made the basis of appellant's eleventh assignment of error. We are of the opinion this assignment is well taken. The refused charge is not sufficiently embraced in and covered by any paragraphs of the court's general charge to render its refusal immaterial. The appellant testified:

"After I got on the train and before it started, the train auditor in charge of the train came through the car and took up my ticket. He stuck a check in my hat band. After the train had reached Campbell, the first station east of Greenville about eight miles, and had stopped at the station and started again, the auditor came into the coach, passed up to the front, and turned and came back, and when he got to me he stopped and asked me where I was going, and I told him I was going to Cason. He asked me where was my ticket. I told him he took up my ticket in the yards at Greenville. He asked me where my hat check was, and I told him it was up in my hat. He said, 'God damn you, keep the check where I can see it.' He grabbed my hat off in a rough manner and threw it back at me. I said, 'Don't tear my hat; that is all the hat I've got.' He said, 'You black son of a bitch, leave that check alone.' When he threw my hat back, it was crumpled up. When I told him, 'Don't tear my hat,' he drew back like he was going to hit me, and I said, 'Don't hit me.' The auditor said, 'You impudent black son of a bitch, I will go and get my gun and come back and kill you.' I said, 'Don't kill me; I haven't done anything to be killed for.' Then he said to me, 'Leave that check alone,' and I said,

'It is high enough for anybody to see; it is just like you left it;' and it was like he left it. He then left the car, and went back into the next car. He was gone a little bit and came back, and as he came in the door, I saw him put his right hand in his coat pocket, and he came up to the seat where I was sitting. He said, 'I told you to leave that check alone.' I said, 'It is high enough for anybody to see it; it is just like you left it.' He said, with his left hand in my face, 'You black son of a bitch, I bet you will,' and he came out with his gun in his right hand, and as he brought it out of his pocket I grabbed his arm and tried to get his gun off from him. I grabbed his arm above the gun. I grabbed it a little above the wrist with both hands. The pistol was an automatic. I couldn't say what the caliber was. When I grabbed his arm, he tried to get off from me and get in a position to shoot me, and I was trying to hold him and stay with him and dodge the gun, that is, I was trying to turn his arm, pushing it off from me, he was going backward towards the door, and I kept him or tried to keep him between me and the gun. I was kinder behind him. He was going back trying to get loose from me, and I was staying with him, close to him to keep him from shooting me. When he got back about to the door of the car, he fired the pistol. That shot struck me in the knee. I felt my knee give way. He kept on going back and trying to get loose from me, and finally got out on the platform between the coaches. After he got out there, I think four shots were fired. One of the bullets went through my shirt, one went through my coat, through the front part of the left side. When he cursed me and said I was an impudent black son of a bitch and that he would get his gun and come back and kill me, I had not said anything saucy or impudent, and had been acting in a manly way. * * * When Mr. Fulkerson came back, he came right in the door he went out of. I was facing him. When he came in he was mad. When he came in, I had not done anything. When he came up to me, he had his right hand on the pistol in his pocket. He had his left hand in my face. He did have the pistol directly in my face. When he told me he was going to kill me, I asked him couldn't he see it [the check]; it was high enough for him to see; and he threw his left hand in my face and said, 'I bet you will.' I then jumped and grabbed his arm. He had the pistol in his right hand. I cannot show you how I grabbed it. I was excited and trying to save my life. I grabbed his wrist to hold the gun off."

The appellant had the right to prepare and demand the giving of a charge requiring the jury to find whether the evidence established the existence of the group of facts contained in the special charge, and instructing them, if they found such group of facts to be established by the evidence, to find for the appellant. Railway Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058.

"Such a charge directs the minds of the jury to the very facts in issue and invokes their judgment upon the evidence relative to that issue." Railway Co. v. Rogers, 91 Tex. 52, 40 S. W. 956.

[4, 5] The appellant also requested the court to charge the jury that—

"A carrier of passengers is bound to exercise the utmost care to protect its passengers from the insults, abuse, and injury of its own employés, and a failure to exercise this duty would be negligence, and, further, that if the appellant was a passenger on the appellee's train on the occasion alleged in his petition, and that after leaving the town of Campbell the appellee's train auditor approached the appellant and demanded his hat check and became insulted at the appellant's words and manner, and cursed and abused appellant, and that by reason of such conduct on the part of the auditor the appellant was caused to suffer humiliation, shame, anxiety, or fear, to find for the appellant on the issue and assess his damages," etc.

These charges were refused, and of this the appellant complains. We are inclined to the opinion that the charges present substantially correct propositions of law, and that they or their equivalent should have been given. The carrier is liable for insults offered its passengers by its employés, and, the issue of damage to appellant by reason of abusive and insulting language claimed to have been used by the auditor towards the appellant having been raised by the pleadings and evidence, appellant, it occurs to us, was entitled to have the issue submitted to the jury. The theory of the appellant was and is that the appellee's auditor cursed and abused him when he first asked appellant for his ticket, without provocation or excuse, in the presence of other passengers, and then went away and later returned, renewed his abuse, and in addition thereto threatened the life of the appellant, assaulted him with the pistol, and while struggling with the auditor to save his life the auditor shot him. The appellant was entitled, in virtue of appellee's contract of safe transportation to protection, not only from an unprovoked assault by the auditor upon him with a pistol, if there was such, but also against the misconduct, negligence, or abusive language of its auditor.

There are several assignments of error complaining of the court's refusal to give certain other special charges requested by the appellant, but such charges were, we think, sufficiently covered by the court's main charge, or have been disposed of by what we have already said, or that the refusal of such of them as were not covered by the court's general charge is not reversible error.

We think the evidence was insufficient to raise the issue pleaded, that the appellee instigated and wrongfully procured the arrest and incarceration of the appellant in the jails of Hopkins and Hunt counties, and that the trial court, therefore, correctly refused to submit such issue.

For the reasons indicated, the judgment is reversed, and the cause is remanded.