### SCHAFF v. WRIGHT. (No. 2726.)

(Court of Civil Appeals of Texas. Texarkana. April 19, 1923. Rehearing Denied May 3, 1923)

**1. Carriers ⊜⇒318(1)—Negro passenger held wrongfully assaulted by auditor of carrier.**

Evidence that plaintiff negro was asked by defendant carrier's servant where his (plaintiff's) hat check was, and, after pointing to his hat containing the check, was called vile names and roughly handled and threatened with death, and in a struggle with defendant's servant was shot in the leg, *held* to warrant a verdict for damages for the wrongful assault.

**2. Carriers ⊜⇒319(3)—$5,000, reduced by remittitur to $3,750, not excessive for bullet wound in knee at hand of train auditor.**

$5,000, reduced by remittitur to $3,750, *held* not excessive for injuries to passenger caused by bullet wound in knee when train auditor assaulted and shot plaintiff.

**3. Appeal and error ⊜⇒215(1)—Objections to charge not made below not considered on appeal.**

Objection to the court's charge will not be considered on appeal, in absence of objections at the trial.

**4. Appeal and error ⊜⇒1056(2)—Exclusion of evidence why carrier's servant asked passenger whether he paid fare held not error.**

Where the offense which formed the basis of plaintiff passenger's suit was, not the conduct of defendant's servant in asking plaintiff if he had a check or had paid his fare, but in the abusive language the servant used and in wrongfully shooting plaintiff, exclusion of evidence that the servant had been informed by a train porter that several negroes had boarded the train near the point where plaintiff was assaulted, offered to explain why the servant went to plaintiff to ascertain if he had paid his fare, *held* not error, since that fact might have been admitted as true without affecting the real issue involved.

**5. New trial ⊜⇒99—Refusal to grant a new trial on ground of newly discovered evidence held not error.**

Refusal to grant new trial on ground of newly discovered evidence that injured plaintiff was seen walking without crutches *held* not error, where from plaintiff's testimony the jury could have inferred he did not always use them and he made no attempt at concealment and no showing was made why all the material facts could not have been previously obtained by ordinary diligence in view of the pendency of the suit for several years.

Error from District Court, Hunt County; Geo. B. Hall, Judge.

Action by Riley Wright against C. E. Schaff, receiver. Judgment for plaintiff, and defendant brings error. Affirmed.

Chas. C. Huff, of Dallas, and McMahon & Dohoney, of Greenville, for plaintiff in error. Porter & Porter, of Greenville, for defendant in error.

HODGES, J. This suit is based upon a claim for damages resulting from an assault made by a train auditor upon the plaintiff, a negro passenger. It is the second appeal, the former being reported in 228 S. W. 333, where the material facts are stated in detail. In the last trial the plaintiff recovered a judgment for $5,000 for injuries alone. This

was later reduced to $3,750 by a remittitur filed at the instance of the trial court.

[1, 2] According to the testimony of the plaintiff, he took passage on the plaintiff in error's train at Greenville, going to Cason— something less than 100 miles distant. Soon after boarding the train he surrendered his ticket to the auditor. The next time he saw the auditor was just after they were leaving Campbell, a short distance east of Greenville. At that time the auditor came into the coach, walked by the plaintiff, and later came back and asked plaintiff for his ticket, he informed the auditor, in a polite way, that he had surrendered his ticket at Greenville. The auditor then asked for the plaintiff's hat check, and was informed that it was in his hat, where he (the auditor) had put it, at the same time pointing to the hat. Thereupon the auditor called him a vile name and directed him to keep the check where it could be seen. He also jerked the hat from plaintiff's head in a rough manner. Plaintiff protested against that treatment; whereupon the auditor threw the hat into the plaintiff's lap and directed him to leave the check alone.

The auditor later cursed him and threatened to get his gun and kill plaintiff. Sometime later the auditor came back through the same car to where plaintiff was sitting, and calling him a vile name, said, "I told you I was going to kill you," and threw his left hand in plaintiff's face. The auditor was at the time standing in the aisle, close to the bench on which the plaintiff was sitting. Believing that he was going to be killed, plaintiff grabbed the auditor, and a struggle ensued in which the auditor was backed out onto the platform. In the struggle the auditor shot the plaintiff in the knee. Plaintiff took the pistol from the auditor and returned with it to his seat. He disclaimed any purpose of trying to injure the auditor, but said that he acted solely in his own defense. The plaintiff was corroborated by several other witnesses. The auditor testified to quite a contrary state of facts. He stated, in substance, that when he accosted plaintiff the latter became offended and assaulted him, and that he shot the plaintiff in self-defense. The auditor was also corroborated by other witnesses.

The conflict thus presented in the evidence was determined by the jury in favor of the defendant in error. If his version of the affair be correct, he was wrongfully assaulted and his injuries were sufficient to justify an award of the damages which he recovered.

[3, 4] Several assignments are presented complaining of the charge of the court, but no objections to the charge were made in the trial, and none will now be considered. Plaintiff in error offered to prove by the auditor that he had been informed by the train porter that several negroes had boarded the train at Campbell, a small station a short distance east of Greenville. This was offered as explanatory of why the auditor went to the defendant in error for the purpose of ascertaining if he had paid his fare. That fact might have been admitted as true without in any way affecting the real issue involved. The offense which formed the basis of the suit was not the conduct of the auditor in asking plaintiff if he had a check, or had paid his fare, but in the abusive language he subsequently used and in wrongfully shooting the plaintiff. It should be conceded that that auditor had a legal right to satisfy himself, in a proper way, whether any passenger on board the train had paid his fare. The assignment is without merit.

[5] It is further contended that a new trial should have been granted because of the discovery of other material evidence. The plaintiff in error alleges that since the trial it had discovered three witnesses, each of whom would testify to facts regarding the plaintiff's physical condition prior to the last trial. One of these witnesses was a doctor who resided at Cason, where plaintiff lived, and who was in the service of the appellant as one of its physicians. He would testify that he had seen plaintiff walking without crutches. Two other witnesses, it is alleged, would testify to substantially the same facts; that is, that they had seen plaintiff at different times walking without a crutch or a stick, and that he did not seem to be limping. This testimony was material only for the purpose of showing that the plaintiff's injuries were not as great as he claimed them to be. Plaintiff himself testified that prior to the last trial he had lived on the farm near Cason and had assisted in raising a crop during the year; he did not plow any, but he chopped cotton, hoed corn, and picked cotton. The jury had a right to infer that in doing that kind of work he had to discard his crutch and stick. It is not denied that the plaintiff could work, if he felt so disposed, without the assistance of either. It was disputed that the bullet was still in his knee. It was further shown that the employees of the plaintiff in error knew where the plaintiff resided. There is nothing to show that he was concealing or secreting himself. A number of special agents in the employ of the plaintiff in error had been detailed to investigate this particular case. The suit has been pending for several years. There does not appear any reason why they could not have ascertained all of the material facts previous to the last trial, by the exercise of ordinary diligence. The court therefore had a right to conclude that there was no merit in the motion for a new trial.

The judgment will be affirmed.